IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

NATHANIEL FLOYD,

   Plaintiff,

v.                    Civil Case No.: 2:15–CV–25
                      (JUDGE BAILEY)

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

   Defendant.

## REPORT AND RECOMMENDATION

For the reasons that follow, I recommend that [ECF No. 12] Plaintiff's Motion for Summary Judgement be **DENIED** and that [ECF No. 14] the Commissioner's Motion for Summary Judgement be **GRANTED**.

## I. INTRODUCTION

On April 2, 2015, the Plaintiff, Nathaniel Floyd ("Floyd" or "Plaintiff"), filed this action for judicial review of an adverse decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. ECF No. 1. The Commissioner filed her Answer on June 19, 2015. ECF No. 8. The Plaintiff then filed his Motion for Summary Judgment on July 17, 2015. ECF No. 12. The Commissioner filed her Motion for Summary Judgment on August 12, 2015. ECF No. 14.

## II. FACTS

### A. Procedural History

Plaintiff applied for DIB benefits alleging a disability beginning on November 19, 2010. ECF No. 13 at 1. Plaintiff's claims were initially denied on August 9, 2011, and upon reconsideration on March 27, 2012. *Id.* On May 22, 2012, Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"). *Id.* An ALJ hearing was held on November 19, 2013, before ALJ Maria Nunez. *Id.* Plaintiff was represented by Ambria Adkins, Esq., at the hearing. Plaintiff testified during the hearing, as did an impartial Vocational Expert ("VE"). *Id.* On December 20, 2013, the ALJ found that based on the application for DIB that Plaintiff protectively filed on March 4, 2011, he is not disabled under sections 216(i) and 223(d) of the Social Security Act. R. 20. Plaintiff appealed this decision to the Appeals Council, which denied his request for review on February 2, 2015. R. 1–6. Plaintiff then timely brought his claim to this Court.

**B. Medical History**

In a disability form completed by Plaintiff, he reported suffering from a thoracic aortic aneurysm, renal/kidney disease, gout, and high blood pressure. R. 163. Plaintiff underwent surgery at Johns Hopkins on November 18, 2010, in an operation titled, "[d]escending thoracic aneurysm resection and repair, cardiopulmonary bypass, deep hypothermic circulatory arrest." R. 264. Plaintiff asserts that he "recovered well, and was discharged on November 24, 2010, with home health care." ECF No. 13 at 6 (citing R. 253; 257). Plaintiff's recovery was largely uneventful, and generally undisputed. Plaintiff's medical history is mostly inapposite to the Court's inquiry because it is not the issue in dispute. Thus, although the Court has read through the parties' pleadings and the record, it finds that this brief recitation of Plaintiff's medical history is appropriate.

**C. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on November 19, 2013. R. 26–65. The following portions of the testimony are relevant to the disposition of this case.

1. <u>Floyd's Testimony</u>

At the hearing, Plaintiff testified that he was a 55 year-old divorcee who had served in the

U.S. Army and worked as a human resource specialist for the federal government. R. 33–36. Plaintiff testified that he had been doing the same job for fifteen years prior to his medical issues, and has since returned to do the same work for a different federal agency. R. 36–37.

In explaining to the ALJ why he could not work between November 18, 2010, and December 5, 2011, Plaintiff testified that he had "open heart surgery to repair an 18-inch dissection of [his] aorta on the 17th of November." R. 37. Plaintiff further indicated that he had some issues with the medications and "developed renal disease and the gout that had gotten really bad." *Id.* Plaintiff testified that during the first eight months after the surgery, he spent approximately seventeen to eighteen hours a day lying down. R. 38. When the ALJ asked why he laid down so much, Plaintiff stated that it was due to "[l]ack of energy, medications . . . and just the pain." R. 38. Plaintiff also testified that his girlfriend, who lived about fifteen miles away at the time, would come by every day to do cooking, cleaning, and other basic tasks around the house. R. 39.

Plaintiff testified that after the first eight months he started "feeling somewhat better"; he tried to join a gym, but that did not work because he lacked enough energy to go and exercise. R. 39–40. Plaintiff stated that he "applied for a job because [he] thought maybe [he] could do it but [he] realized [he] couldn't do that either." R. 39. Plaintiff told the ALJ that when he applied to the three or four jobs he applied to, he expected a delay between the application process and an actual start date. R. 40–41.

Plaintiff testified that, over the last four months prior to working, he was taking showers but rarely left his house. R. 42. His girlfriend still cooked most of his meals, but he would occasionally order out or heat up frozen dinners on his own. *Id.*

Plaintiff's attorney asked him if he had any problems with fatigue during his post-surgical

3

recovery, and he said that he d*Id.* R. 47. He testified that approximately an hour or two after waking up he would feel "drained again." *Id.* Plaintiff also testified that, as a result of working in human resources for the government, in his experience it generally three to four months to get someone hired, and that is why he submitted applications for jobs before he was actually ready to start working. R. 48. Plaintiff stated that he was able to work from home once or twice a week at his new job and that it was with a good agency, so that is why he accepted the position. R. 48–49.

Plaintiff also testified about side effects he experienced from the various medications he was taking. Specifically, he said that he suffered from dizziness, fatigue, nausea, and acid reflux. R. 51. Plaintiff also testified that he had pain from his gout on a daily basis during the closed period. R. 54.

2. <u>The Vocational Expert's Testimony</u>

A VE also testified at the hearing. R. 57. In characterizing Plaintiff's past work, the VE stated it was as a manager in human resources. *Id.* The VE then described that job as sedentary with an SVP of 8, as generally performed. *Id.* The ALJ then told the VE she was going to ask two hypothetical questions, and for both of the questions she asked the VE to

> assume that we're concerning an individual who is of the same age, the same educational background and work experience as the claimant. For the first hypothetical question I'd like you to further assume that I find the claimant's testimony credible and the individual had all the, imitations the claimant described. Essentially, the individual would be able to lift up to 20 pounds and stand for, at one time, for 30 minutes. There would be no limitation with respect to sitting. The individual would need to lie down during 17 to 18 hours in a day and would have, what I would characterize as a marked limitation in the ability to attend and concentrate. And by marked, I mean that the individual would be unable to attend and concentrate sufficiently to perform even unskilled work or work within SVP 1 or 2 during 20 percent of the work day, work week or more.

R. 57–58.

The ALJ then asked, "[g]iven those limitations, would the individual be able to perform the

4

claimant's past work?" R. 58. The VE testified that not only would the assumed individual not be able to perform such work, but also that individual would not be able to perform any work in the local or national economy. *Id.* For the second hypothetical question, the ALJ asked the VE to consider an individual who

> would be occasionally able to lift and/or carry, including [INAUDIBLE] over 20 pounds and frequently lift and/or carry, including [INAUDIBLE] 10 pounds. The individual would be able to stand and/or walk with normal breaks for a total of six hours in an eight hour work day and sit with normal breaks for a total of about six hours in an eight hour work day but would need to be able to alternate between sitting and standing in place every one half hour. The individual would be able to occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds. The individual would be able to occasionally balance, stoop, kneel, crouch and crawl but would need to avoid hazards, including machinery and heights. Due to the pain, the individual would be limited to unskilled work. Pain and side effects of medications. Unskilled work or work with an SVP of no more than 2.

R. 58–59.

The ALJ then asked the VE if, under this second hypothetical, the individual would be able to perform the Plaintiff's past work, and the VE said, "no." R. 59. When asked if there were other jobs in the local or national economy that this hypothetical individual could do, the VE testified that there were. Specifically, the VE testified that the individual could do the job of an office helper, children's attendant, or information clerk. R. 59–60. The ALJ then asked if the VE's testimony was consistent with the DOT, and the VE responded that it was.

The VE was then questioned by Plaintiff's representitive, Ms. Adkins. R. 60. Ms. Adkins asked if the hypothetical individual needed extra breaks–beyond morning, lunch, and afternoon–would they still be able to maintain the jobs listed by the VE, and the VE testified that they would not be able to maintain those light jobs. R. 60–61. There was also a discussion about the hypothetical individual being able to do the work of a toll booth collector if his or her capacity to

5

stand and walk was reduced. R. 61–62. Ms. Adkins then asked the VE if the individual were twenty percent less productive than the average worker at the job, would they be able to maintain employment. R. 63. The VE responded in the negative. *Id.*

### III. ALJ FINDINGS

The sole issue presented in Plaintiff's Motion for Summary Judgment is "whether the ALJ erred in assessing Plaintiff's credibility, which resulted in an RFC assessment that is not based on substantial evidence." ECF No. 13 at 6. Accordingly, the Court will only address the ALJ's findings that are relevant to her assessment of Plaintiff's credibility and the RFC.

The ALJ made the following determination regarding Plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that due to the combination of his impairments, the claimant could occasionally lift and/or carry, including upward pulling of 20 pounds and he could frequently lift and/or carry, including upward pulling of 10 pounds. He would be able to stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday. He could sit for about six hours in an eight-hour workday. The claimant would need to alternate between sitting and standing in place every half-hour. He could occasionally climb ramps and stairs, but he should never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, knee[sic], crouch and crawl. He should avoid hazards including machinery and heights. Due to his pain and the side effects of his medications, he would be limited to unskilled work with no more than a specific vocational preparation code of no more than two, non-production type work.

R. 14–15.

Further, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." R. 15. The ALJ also stated that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* The ALJ then noted that "whenever

6

statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire record." *Id.*

The ALJ then recounted much of the Plaintiff's testimony from the ALJ hearing, and concluded that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." R. 16. The ALJ summarized her assessment of the Plaintiff's credibility as follows:

> During the period at issue, Mr. Floyd was independent in his personal activities of daily living. He was able to shop for himself and go outside every day. During the hearing, Mr. Floyd advised that during the period at issue, he lived alone and he was able to vacuum his home, dust, prepare simple meals and load the dishwasher. He was able to have his grandchildren over for game or movie nights. During the hearing, the claimant advised after his surgery, he had home health care for the first three or four months, however, the notes indicated that the claimant had skilled nursing care for three days immediately following his surgery and thereafter, his brother was helping. In his testimony, the claimant advised that for the first eight months after his surgery, he had to lie down 17 to 18 hours a day, yet there are no indications that this was warranted. In fact, his treating surgeon advised that walking was encouraged and he could resume regular activities as tolerated. There are no indications in any of the treatment notes that reflect that Mr. Floyd ever told any of his treating physicians about any side effects from his medications, as he asserted during his testimony. The progress notes reveal that Mr. Floyd quit his last job with the intention of retiring on January 1, 2011. A USAJobs application status report showed that the claimant applied for a job with the General Services Administration on September 19, 2011 and he was selected for the position on October 20, 2011. Thus, reflecting that he was not unemployed for a full 12-month period. Treatment records reflect that he has weighed up to 214 pounds during the period at issue. The progress notes show many instances of non-compliance with treatment modalities and with non-compliance with medication regimen. The claimant's testimony regarding severe pain, fatigue and limitations are not credible because they are not supported by the record, not consistent with his apparent treatment non-compliance and not consistent with his testimony at the hearing when he stated that he began applying for jobs in October and November of 2011. The conservative nature of her[sic] medical care, the limited objective medical findings, and the claimant's admitted activities all diminished her[sic] credibility regarding the frequency and

7

severity of her[sic] symptoms and the extent of her[sic] functional limitations.
R. 17–18. Finally, the ALJ concluded that the RFC "is supported by the objective findings of the claimant's treating physicians, in part by the assessments of State agency medical consultants, and by the claimant's less than credible testimony." R. 18.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

In his Motion for Summary Judgment, Plaintiff argues that the ALJ erred in assessing his credibility, resulting in an RFC that is not supported by substantial evidence. ECF No. 13 at 7. More specifically, Plaintiff contends that the ALJ was required to include "'specific reasons for the findings on credibility, supported by evidence in the case record' that are 'sufficiently specific to make clear to the individual and . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" ECF No. 13 at 7 (quoting SSR 96-7p and 20 C.F.R. § 404.1529). Plaintiff asserts that, even though she acknowledged SSR 96-7p; SSR 96-p4; and 20 C.F.R. § 404.1529 in her findings, the ALJ failed to properly follow the analysis required therein.

Plaintiff further asserts that the ALJ was required by law, but failed, to articulate specific and adequate reasons for discrediting his testimony about pain. *Id.* at 8. Moreover, Plaintiff contends that although credibility determinations are generally within the ALJ's discretion, if an ALJ's credibility determination is based on improper criteria, this court cannot sustain it. *Id.* (citing *Breeden v. Weinberger*, 493 F.2d 1002, 1110 (4th Cir. 1974). Thus, Plaintiff argues that the ALJ's decision is an incomplete and unfair adjudication of his claim and is not supported by substantial evidence.

In her Motion for Summary Judgment, the Commissioner argues that substantial evidence

supports the ALJ's RFC; the ALJ applied the correct legal standards in evaluating the Plaintiff's credibility and statements regarding his medical condition; and the Commissioner met her burden at step five of the sequential evaluation process to produce evidence of work that Plaintiff could perform prior to December 5, 2011.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. Claimant's Credibility

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

An ALJ must consider all of the evidence in the record when making a credibility determination. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to an ALJ's discretion, such determinations shall not be sustained if based on improper criteria. *Breeden v. Weinberger,* 493 F.2d 1002, 1010 (4th Cir. 1974) ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's

demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained."). Moreover, SSR 96-7P states,

> [t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7P (S.S.A.), 1996 WL 374186 at *4.

## V. DISCUSSION

The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ.

When considering whether an ALJ's credibility determination is supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessment for that of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusion. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *Hays,* 907 F.2d. at 1456. Because the ALJ actually observed the Plaintiff and is best situated to make such a determination, "the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989–990. (citing *Tyler v. Weinberger,* 409 F.Supp. 776 (E.D.Va.

1976)).

In this case, the Court finds that the ALJ's credibility assessment of Plaintiff was consistent with the applicable regulation, case law, and Social Security Rulings. 20 C.F.R. § 416.929; SSR96–7P; *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The ALJ carefully considered Plaintiff's subjective complaints and the objective medical record in reaching a conclusion regarding Plaintiff's credibility. The record contains substantial evidence that Plaintiff's statements do not correlate with the objective medical evidence, or with his own description of his activities during the period at issue.

At the outset of the two-step process, the ALJ summarized Plaintiff's testimony and written statements regarding his daily, weekly, and monthly activities. The ALJ went into great detail in describing Plaintiff's testimony. The ALJ also stated, "[a]fter careful consideration of the evidence, I find that the claimant's medical determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." R. 16.

Regarding the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Plaintiff himself noted some of the reasons the ALJ gave for this finding: Plaintiff was independent in personal activities, went outside daily, and shopped for himself; Plaintiff's treating surgeon advised that walking was encouraged and he could resume regular activities as tolerated; Plaintiff was non-compliant with treatment modalities and medication regimens. ECF No. 13 at 9 (citing R. 17–18).

Plaintiff attacks these selected findings by pointing to some favorable testimony from the ALJ hearing. "The ALJ's first reason for discrediting Mr. Floyd demonstrates that the ALJ did not

listen to Mr. Floyd's testimony." *Id.* "[H]e testified that the went out daily, to get some fresh air on his porch, and is not indicative of fulsome activities of daily living and independence." *Id.* But, that is not this Court's inquiry. The ALJ considered not only Plaintiff going outside everyday, but also much more in determining that Plaintiff's "testimony regarding severe pain, fatigue and limitations are not credible because they are not supported by the record, not consistent with his apparent treatment non-compliance and not consistent with his testimony . . . ." R. 18.

Plaintiff leaves out that the ALJ also noted that Plaintiff lived alone, vacuumed, dusted, made simple meals, and loaded the dishwasher. R. 17. The ALJ further noted, and Plaintiff did not address, that during the hearing he advised that "after his surgery, he had home health care for the first three or four months, however, the notes indicated that the claimant had skilled nursing care for [only] three days." Likewise, Plaintiff testified that for the first eight months after his surgery, "he had to lie down 17 to 18 hours a day, yet there are no indications that this was warranted." R. 17–18. "In fact, [Plaintiff's] treating surgeon advised that walking was encouraged and he could resume regular activities as tolerated." R. 18.

The ALJ also noted that "[t]here are no indications in any of the treatment notes that reflect Mr. Floyd ever told any of his treating physicians about any side effects from his medications, as he asserted during his testimony." R. 18. Furthermore, the ALJ noted that Plaintiff began applying for jobs in September 2011 and was selected for one of the jobs in October 2011. *Id.* The ALJ found that this evidenced that Plaintiff was *not* unable to work for a full twelve-month period, as required by the Act. *Id.*; *see* 42 U.S.C. § 423(d)(1)(A). As the Commissioner points out, "[i]t was reasonable for the ALJ to find that such demonstrated work abilities undermined Plaintiff's credibility." ECF No. 15 at 10. This Court agrees with the Commissioner.

13

This Court finds that the ALJ's decision contained specific reasons for her finding on Plaintiff's credibility, supported by the evidence in the case record, and it was sufficiently specific to make clear to the Court the weight the ALJ gave to Plaintiff's statements and the reasons for that weight. Furthermore, this Court finds that the ALJ's decision is supported by substantial evidence.

## VI. RECOMMENDATION

After reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1. Plaintiff's Motion for Summary Judgment be **DENIED**. ECF No. 12.

2. Commissioner's Motion for Summary Judgment be **GRANTED**. ECF No. 14.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: January 20, 2016

/s/ *James E. Seibert*
JAMES E. SEIBERT
U.S. MAGISTRATE JUDGE